IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RICHARD VEGA VILLAFAÑE**  Plaintiff,  v.  **CENTRAL GULF LINES, INC.; LMS SHIPMANAGEMENT, INC; INTERNATIONAL SHIPHOLDING, INC.; THE STANDARD CLUB EUROPE LIMITED.**  Defendants. | CIVIL NO. 15-2961 (JAG)  JURY TRIAL DEMANDED (JONES ACT/MERCHANT MARINER'S CLAIM) NO FEE REQUIRED |

**AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

NOW COMES the Plaintiff, Richard Vega Villafañe, and through the undersigned attorney and respectfully alleges and prays as follows:

**I. INTRODUCTION**

1. This is a federal question action filed by plaintiff to redress his injuries suffered due to the intentional and/or negligent acts committed by defendant, related to an incident occurred on July 3rd 2015.

**II. JURISDICTION AND VENUE**

2. Plaintiff is a seaman, an American Citizen and as an American seaman, he brings this action pursuant to the terms of Section 1916, Title 28, United States Code, without the prepayment of costs or the necessity of depositing security therefore.

1

3. The jurisdiction in this case is founded on the Jones Act, 46 U.S.C. §30104 (formerly 46 U.S.C. § 688), 29 U.S.C. § 1333. In addition, there is also venue and jurisdiction pursuant to 28 U.S.C. section 1332(a) on diversity of citizenship and the amount in controversy exceeds the sum of seventy five thousand dollars, ($75,000.00), exclusive of interest, costs and attorney fees.

4. Venue of this action in this district is proper pursuant to 28 U.S.C. Sec. 1391 (b), since plaintiff is resident of Puerto Rico and he was hired on Puerto Rico by defendants and knowing that he was a resident of this state.

5. This Honorable Court has jurisdiction over the parties and the subject matter of this action pursuant to 29 U.S.C. § 2601 et seq.

### III.   REQUEST FOR JURY TRIAL

6. Plaintiff requests trial by jury.

### IV.   PARTIES

7. Plaintiff Richard Vega Villafañe, *[herein "Plaintiff"]* of legal age, is single and resident of Puerto Rico, with the following address: HC02 Box 7350, Barceloneta, Puerto Rico.

8. Defendant Central Gulf Lines, Inc., is a corporation duly registered and authorized by the state of Alabama with the following address: 11 N Water St # 18290, Mobile, AL 36602, United States.

9. LMS SHIPMANAGEMENT, Inc., is a corporation duly registered and authorized by the state of Louisiana with the following address: Pan American Life Building, 601 Poydras Street, Suite 1850, New Orleans, Louisiana 70130.

10. INTERNATIONAL SHIPHOLDING, INC., is a corporation duly registered and authorized by the state of Alabama with the following address:, Pan American Life Building, 601 Poydras Street, Suite 1850, New Orleans, Louisiana 70130.

11. Codefendant **THE STANDARD CLUB EUROPE LIMITED**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the United Kingdom, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Amended Complaint, a policy of liability insurance issued to Central Gulf Lines, Inc. (herein "CFL"), and/or LMS SHIPMANAGEMENT, Inc., (herein "LMS"); INTERNATIONAL SHIPHOLDING, INC., (herein "IS") and/or to the vessel **Energy Enterprise**, covering all risks for injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel **Energy Enterprise. THE STANDARD CLUB EUROPE LIMITED** address is as follows "Standard House, 12-13 Essex Street, London, WC2R, 3AA, United Kingdom".

## V.    STATEMENT OF CLAIM

12. Plaintiff is a young individual that was born on September 12, 1984.

13. Defendant, Central Gulf Lines, Inc. (herein "CFL"), and/or LMS SHIPMANAGEMENT, Inc., (herein "LMS"); INTERNATIONAL SHIPHOLDING, INC., (herein "IS") made minimum contacts in Puerto Rico by hiring plaintiff.

14. Plaintiff is a Seafarers International Union's member ("SIU").

3

15. At all relevant times CFL, LMS and/or IS managed the vessel known as **Energy Enterprise.**

16. At all relevant times CFL, LMS and/or IS operated the vessel known as **Energy Enterprise.**

17. At all relevant times CFL, LMS and/or IS employed the crewmembers onboard the **vessel** known as **Energy Enterprise.**

**18.** At all relevant times CFL, LMS and/or IS owned the vessel, known as **Energy Enterprise.**

19. Plaintiff worked as a "General Vessel Assist" on board the **Energy Enterprise** from June 4th, 2015 to July 4th, 2015.

20. The **Energy Enterprise** was sailed by Captain Shane Murphy.

21. A voyage commenced on July 2nd, 2015 departing from Tampa Bay, Florida to New Orleans, Louisiana (herein "The Voyage").

22. On July 3rd, 2015, between 9 and 11am, Captain Shane Murphy called a Fire Drill with most of the crew onboard.

23. Once the Fire Drill ended, Captain Shane Murphy called a Safety Meeting at the Control Center, with all crew onboard, including Plaintiff, Mr. Vega Villafañe.

24. The purpose of said meeting was to discuss safety measures onboard.

25. As part of the discussion in said meeting, Captain Shane Murphy asked Plaintiff in front of the whole crew, what command he would give out to

the crew if he were working on the Gang Way and a pirate came onboard asking for his captain.

26.  In response, Plaintiff answered that, since it was his first day, he didn't know the answer to his question.

27.  Captain Shane Murphy, while yelling, began to insist on the question asking Plaintiff repeatedly to answer it.

28.  Plaintiff wasn't able to answer the question since Captain Shane Murphy's aggressive conduct.

29.  Captain Shane Murphy then aggressively moved across the room and pushing the crew apart, reached for a machete he had on board.

30.  Afterwards, with a hand against Plaintiff's chest and the other hand holding the machete against Plaintiff's neck, Captain Shane Murphy yelled, threatened and repeatedly asked Plaintiff to answer the question.

31.  Plaintiff was so terrified, anxious and nervous that all he was able to do was ask the Captain "why?".

32.  While Captain Shane Murphy was holding and pushing the machete against his neck, Plaintiff and fellow crewmembers feared for his life.

33.  Captain Shane Murphy, while acting irrationally, insisted on asking the question to other crewmembers while still holding the machete on his hand.

34.  After the incident, Plaintiff felt nervous, anxious, terrified and feared for his life and once they were near cellphone signal he immediately notified the incident to the SIU.

35. On July 4th, 2015, Plaintiff immediately notified the incident to CFL, LMS and/or IS, by texting Shari Cowles, Manager of Safety and Training.

36. Since it was a holiday, Plaintiff was only able to text Ms. Cowles and could not call defendant directly.

37. Mrs. Shari Cowles forwarded all the messages received from Plaintiff to her boss, Mr. Robert Barrington.

38. Upon receiving news of the incident, Mr. Robert Barrington wrote to Plaintiff saying he would take action.

39. Plaintiff then tried to go back to work but felt unsafe and nervous during his shift.

40. While working, the Bosun of the ship told him that Captain Shane Murphy wanted to speak with him.

41. Plaintiff then met with Captain Shane Murphy, the Chief Mate and the Bosun at the Control Center.

42. Upon arriving to the meeting, Captain Shane Murphy asked Plaintiff what he had done and why had he decided to report him to the Company.

43. At that moment, Plaintiff and Captain Shane Murphy called Mr. Robert Barrington and Plaintiff once again narrated the whole incident.

44. After Plaintiff explained the incident to Mr. Barrington, Captain Shane Murphy admitted he had the weapon on board, he admitted to his actions and expressed that he didn't feel right and felt he couldn't do his job anymore.

45. That afternoon, Plaintiff once again met with Captain Shane Murphy and expressed to him that he didn't feel safe around him, was feeling too nervous and emotionally broken, and thus could not stay onboard and once again called Mr. Barrington to come to some sort of agreement.

46. Since Mr. Barrington said that he would call the captain with further instructions, Plaintiff left and awaited his call.

47. Captain Shane Murphy then called Plaintiff and advised him that Defendant was going to pay for his way back to Puerto Rico, however, they refused to pay Plaintiff the totality of the salary that was agreed by contract.

48. Prior to leaving, Plaintiff met with Captain Shane Murphy and narrated the whole incident on a letter.

49. Captain Shane Murphy, admitting the facts therein, signed said letter.

50. Upon leaving the **Energy Enterprise,** Plaintiff advised defendant that he was feeling nervous and terrified and asked for a doctor, however, defendant denied him medical attention.

51. Since Defendant booked Plaintiff a flight that set to leave too soon, Plaintiff didn't make the flight in time and had to stay at a hotel until the next day.

52. The next day, July 5th, 2015, Plaintiff finally arrived to Puerto Rico.

53. Afterwards, Plaintiff received psychologic treatment.

## FIRST CAUSE OF ACTION – NEGLIGENCE

54. The allegations contained all in previous paragraphs are re-alleged as if fully alleged herein.

55. Plaintiff's damages were a direct consequence of defendants' negligence (a) lack of supervision; (b) lack of inspection of weapons on board; (c) failure to supervise Captain Shane Murphy (d) failing to maintain safe premises; (e) failing to provide adequate and immediate medical attention; (f) Captain Shane Murphy's negligent actions; (f) failing to hire a Captain duly emotionally capable to perform his work (g) failed to provide medical assistance; (h) by not terminating Captain's employment with defendants; (i) by by allowing Captain to have and/or use a Machete while onboard; (j) by allowing Captain to have and/or use a Machete while on coastwise voyages; (k) by failing to file with the Coast Guard a "Report of Marine Accident, Injury or Death" (Form CG 2692) in connection with Plaintiff's injury and/or Captain's attack to Plaintiff; (l) Plaintiff's injury is considered to be a "serious marine incident" and thus defendants failed to comply with 46 C.F.R. 4.03 and 4.05; among other violations.

56. CFL, LMS and/or IS, actions and omissions, through fault and/or negligence, caused damages to Plaintiff, in violation of the Jones Act entitling plaintiff to damages caused as a result of those acts and omissions.

57. CFL, LMS and/or IS, negligence and/or intentional acts were a proximate legal cause of Plaintiff's injury.

## SECOND CAUSE OF ACTION – MAINTENANCE & CURE

58. The allegations contained all in previous paragraphs are re-alleged as if fully alleged herein.

59. There is a Collective bargaining agreement ("CBA") between SIU and Defendants.

60. That CBA affects all SIU members.

61. Said CBA clearly states that the maintenance rate will be weekly paid at $16.00 per day.

62. Since Plaintiff was discharged, HE entitled to receive unearned wages from the date he was discharged until the end of the voyage.

63. Plaintiff is also entitled to receive a reimbursement of all medical expenses incurred, none of which were paid by defendants.

64. Until today, defendants failed to pay maintenance and cure and unearned wages, and they owed Plaintiff an amount not less than $25,000.00.

## THIRD CAUSE OF ACTION

65. The foregoing paragraphs are realleged and reasserted herein.

66. Co-defendant **THE STANDARD CLUB EUROPE LTD;** is liable for the negligence, fault, legal violations and unseaworthy conditions of their insured up to the coverage limit of the certificate of entry to their benefit. Plaintiff hereby exercises their right to present a direct action against the aforementioned protection and indemnity club.

## DAMAGES

67. Once in Puerto Rico Plaintiff tried to lead a normal life and try to forget the attack he had suffered, however, he quickly realized he couldn't eat, sleep or calm down.

68. On July 7th, 2015, Plaintiff went to see a psychologist who found him suffering of anxiety, insomnia, gastrointestinal problems, trouble sleeping and tremors.

69. Upon recommendation of his psychologist, Plaintiff has continued to assist weekly to work on relaxation techniques and cognitive behavioral therapy.

70. As a result of the actions described herein, plaintiff was unable to continue working aboard the Energy Enterprise

71. As a result of the events described herein, Plaintiff has suffered and continues to suffer irreparable emotional damages.

## VI. RELIEF

72. Wherefore, plaintiff prays that this court enter judgment in favor of plaintiff and against defendants and:

73. Award the plaintiff the following monetary amounts, totaling $3,325,000.00 to be paid by defendants:

    a. For his emotional and physical damages and pain and suffering, including damages done to his personal tranquility, enjoyment of

    life, dignity, among others, an amount which is estimated at this time to be in excess of $3,000,000.00.

b. For loss of past and future income, as well as economic losses, an amount which is estimated at this time to be in excess of $50,000.00.

c. Punitive damages for an amount not less than $250,000.00. Defendants also owes an amount not less than $25,000.00 for maintenance and cure and unearned wages;

d. Provide for the payment of all applicable interests, including prejudgment interest, together with reasonable attorney's fees, litigation expenses and the costs of this action.

e. Grant plaintiff such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this February 16, 2016.

**BELLVER ESPINOSA LAW FIRM**
Condominio El Centro I, Suite 801
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tel: (787) 946-5268
Fax: (787) 946-0062

S/Alejandro Bellver Espinosa
Alejandro Bellver Espinosa, Esq.
U.S.D.C. – P.R. 225708
Email: alejandro@bellverlaw.com